## McLANE v. CROPPER.

Appellate Practice ; Supreme Court of the District of Co-
    lumbia ; Assignment of Justices of.

1. Where this court upon an appeal from a decree of the Orphans'
    Court directing the partial distribution of an estate, modified in
    some particulars the decree and remanded the cause, a decree
    entered by that court·in accordance with the mandate issued to
    it is proper, although this court in its opinion had stated that at a
    prior stage of the cause a final distribution might possibly have
    properly been ordered.
2. The Supreme Court of the District of Columbia sitting in general
    · term has the power to assign one of its justices to a special term
    temporarily or for any special emergency, without formally re-
    voking the assignment of the justice theretofore designated to
    hold such special term for the current year.
3. It would *seem* that the same result might be accomplished, under
    the general order of that court of 1867, relating to the yearly
    assignment of justices, by a simple request in writing on the part
    of the justice holding a special term to one of the other justices
    to act in his stead in a given matter.
4. Where an assignment so made by the general term limits the pow-
    ers and duties of the justice assigned, such limitation even if im-
    proper will not in itself invalidate the assignment.
5. When an inferior court enters a judgment or decree in precise ac-
    cordance with the mandate received from an appellate court, no
    second appeal will lie.

No. 457.   Submitted May 10, 1895.   Decided June 3, 1895.

HEARING on an appeal by executors from a decree of the
Orphans' Court entered in accordance with a mandate of
this court on a former appeal.   *Appeal·dismissed.*

The COURT in its opinion stated the case as follows :

This is the third or fourth appeal in the present case.
When the case was before us at the last term upon an ap-
peal from an order made in the special term of the Supreme
Court of the District of Columbia held for Orphans' Court
business, by which a partial distribution of the estate of
Allan McLane, deceased, was ordered, while we held the

action of that court in decreeing such distribution to have been substantially correct, we remanded the cause for the modification of the order and its reformation in certain specified particulars, in accordance with the opinion of this court then rendered. 5 App. D. C. 276. When the mandate of this court was presented in the court below to be there carried into effect, Mr. Justice HAGNER, who had been previously assigned to hold that special term during the current year, for good and sufficient reasons, entirely satisfactory to himself, declined to sit in the case, at all events with reference to that particular matter, and by an order of the General Term of the Supreme Court of the District of Columbia, the chief justice of that court presiding, Mr. Justice Cox was assigned, on March 11, 1895, to hold that special term. The order was as follows:

. " Mr. Justice Cox is hereby, this 11th day of March, A. D. 1895, assigned to hold the special term of this court for Orphans' Court business, and he is further assigned and requested to hold the special term for Orphans' Court business for the purpose of modifying and reforming a decree passed by the said special term October twenty-third, A. D. 1894, *In re* estate of Allan McLane, deceased, No. 4743, Probate, according to the mandate of the Court of Appeals, filed February 27th, A. D. 1895."

. When, in pursuance of this order, Mr. Justice Cox proceeded to hold the special term, there seems to have been some question raised as to the extent of his authority under the assignment; and thereupon the General Term, under date of March 14, 1895, passed another order, which was as follows:

" It appearing to the General Term that the order passed in the matter of the estate of Allan McLane, deceased, on the 11th of March, 1895, was inadvertently passed so as to assign Justice Cox generally to hold the term for the Orphans' Court, as well as to hear the particular matter mentioned therein, and should be revoked—

" It is accordingly, this 14th day of March, 1895, by the

court in General Term, adjudged and ordered that the said order of the 11th of March, 1895, be, and the same is hereby, revoked ; and, as a substitute therefor, it is further, this day, adjudged and ordered that Mr. Justice Cox be, and he is hereby, assigned and requested to hold the special term for Orphans' Court business for the purpose only of modifying and reforming a decree passed heretofore by Mr. Justice HAGNER, then holding said special term for Orphans' Court business, on the 23d day of October, 1894, *In re* estate of Allen McLane, deceased, No. 4743, Probate, according to the mandate of the Court of Appeals filed February 27th, A. D. 1895.

(Signed), " E. F. BINGHAM, *C. J.*
" A. B. HAGNER,
" CHAS. C. COLE."

There was a general order of the court providing for the assignment of the several justices thereof to the special terms, passed in 1867 and yet in force, which is as follows :

"*Ordered*, That hereafter in each year, on or before the first Monday in February, the chief justice of this court shall make an assignment of each of the justices of this court to hold the various courts for the then coming year, and no justice of this court shall transact or interfere with the business of either of such courts to which he is not assigned, except on a written request of the justice assigned to hold such court, and such assignment, when made, shall be entered upon the minutes of the court."

In pursuance of the reservation in this general order, and for the purpose, it would seem, of precluding any doubt as to the validity of the assignment of Mr. Justice Cox, Mr. Justice HAGNER, on the same day, March 14, 1895, addressed a request to Mr. Justice Cox in terms as follows :

" The undersigned, the justice now assigned to hold the term of the Supreme Court of the District of Columbia, holding an Orphans' Court, doth hereby request Mr. Justice Cox to hear the particular question referred to in the

foregoing order of the General Term (the order of March 14, 1895).

(Signed), " A. B. HAGNER,

"*Asso. Justice.*"

Thereupon Mr. Justice Cox proceeded to hold the special term of the Supreme Court of the District of Columbia for Orphans' Court business, in pursuance of the order of March 14, 1895, and of the invitation of Mr. Justice HAGNER. On behalf of the appellee, a motion was presented to him to modify and reform the order of October 23, 1894, in accordance with the mandate of the Court of Appeals. This was immediately antagonized by the appellants, who presented their accounts, filed some time before, and to which exceptions had been filed that yet remained undisposed of; and they requested the court to pass upon these accounts, and to direct or authorize a final distribution of the estate in accordance with the terms of the will of Allan McLane.

This Mr. Justice Cox declined to do. He declined to consider any of the applications made on behalf of the appellants, holding that he had been assigned to that special term merely for the sole purpose of modifying the decree of October 23, 1894. That, however, he proceeded to do ; and he thereupon, after hearing the parties, entered the following decree :

" In pursuance of the mandate of the Court of Appeals of the District of Columbia, filed herein February 27th, 1895—

" It is by the court, this 14th day of March, A. D. 1895, decreed and ordered that the decree heretofore passed herein on the 23d day of October, A. D. 1894, be, and the same is hereby, modified and reformed as follows: The said executor and executrix shall proceed forthwith to make partial distribution of the income of said estate accumulated in their hands or received from the collectors on or prior to October 23d, A. D. 1894, and the distribution to the widow shall be made to the amount of fifteen thou-

sand four hundred and ninety-three and sixty-two hundredths dollars ($15,493.62), and the distribution directed to be made ' *to or for* ' the heir-at-law shall be made to James L. McLane, trustee, for Anne Cropper, and to the amount of twenty-three thousand two hundred and forty and forty-three hundredths dollars ($23,240.43), and the said executor and executrix are directed to reserve as of October 23, 1894, and out of the body of the estate on account of commissions and other expenses and debts and obligations of said deceased, for which they may claim credit prior to October 23, 1894, and the sum of thirty-seven thousand one hundred and fifty-three and 8-100 dollars ($37,153.08), with interest to the amount of four thousand eight hundred and twenty-nine and ninety-hundredths dollars ($4,829.90), and the amounts so reserved shall be applied to the debts and expenses aforesaid, subject to the future approval of the court; and the said decree of October 23d, 1894, is reaffirmed, being hereby modified and reformed as indicated by said mandate and as herein set forth and in no other respect whatever.

" And the undersigned, having been assigned to the Orphans' Court for the sole purpose of modifying the decree before referred to in pursuance of the mandate of the Court of Appeals, declines to consider the applications this day filed on behalf of the executors to pass upon the account.

(Signed),      " W. S. Cox, *J.*"

The appellants objected to the authority and jurisdiction of Mr. Justice Cox to hold the special term and to pass this decree; and thereupon they prosecuted the present appeal.

*Mr. Bernard Carter, Mr. Enoch Totten* and *Messrs. Gordon & Gordon* for the appellants.

*Mr. J. M. Wilson* and *Mr. Blair Lee* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellants make three assignments of error:   1st. That the Supreme Court of the District of Columbia in

General Term was without statutory authority to assign Mr. Justice Cox to hold the special term for Orphans' Court business, so long as the assignment of Mr. Justice HAGNER remained unrevoked; 2d. That the Supreme Court of the District of Columbia in General Term was without statutory authority to limit the powers and jurisdiction of a justice assigned to hold the special term for Orphans' Court business to the exercise of certain speeific duties; 3d. That the order of Mr. Justice Cox of the 14th of March, 1895, was not in accordance with the mandate of the Court of Appeals, which was to modify and reform said decree in conformity with the opinion of that court.

1. Under their third assignment of error, the appellants do not in any manner controvert the entire correctness of the order now appealed from otherwise than because Mr. Justice Cox failed to pass upon their accounts and to direct a full and final distribution. It is not claimed that the partial distribution directed by the order is not in itself correct or in accord with the opinion of this court rendered upon the former appeal. The contention is that, because we said in that opinion that the motion of the appellants, made at a former stage of the case, for authority to distribute the whole estate, ought possibly to have been granted, inasmuch as the writ of error taken to the Supreme Court of the United States in the contest over the validity of the will of Allan McLane did not operate as a supersedeas, therefore there is error in the present instance, because Mr. Justice Cox has not now granted this motion, and has not wholly remodeled the decree of October 23, 1894, so as to provide now for a total and final distribution of the estate, instead of confining himself, as he did, to the reformation of that decree in accordance with the specific directions of the mandate of this court.

In our former opinion we said distinctly that the question of a total and final distribution of the estate was not before us at that time. A special and partial distribution had been applied for by the appellee, and had been ordered in the

court below.    Upon appeal to us, we were of opinion .that certain features in that order were indefinite, and that in certain particulars the order should be modified and reformed; but the general propriety of the order we fully affirmed; and in remanding the cause, we decreed that it should be re-entered as thus directed to be modified and reformed. This the court below has done in precise accordance with the mandate of this court. How can we now regard as error that which we have specifically directed to be done? Are we required to regard this as error because we said that something else also, not necessarily antagonistic to this, might at another time have been done?    A proper reformation of the decree, it is argued, would have been to discard entirely the theory of a partial distribution, and to direct a total distribution.    We have to say that this would not have been a reasonable or proper compliance with the mandate, which approved the partial distribution and directed it to be carried into effect, upon proper modification of the order by which it had been decreed.    Nor is the present application of the appellants anything more than an attempt to reopen the whole case.    We fail to see how there is any inconsistency in the direction of a partial distribution of an estate at one time, and of a total distribution of the residue at some proper time thereafter.

The order of the court below now appealed from is in precise accordance with the mandate of this court; and as it is so, it is not very apparent to us of what consequence it is to the appellants which of the justices of that court it was who sat in the special term to enter the order.    If their contention be correct that the justice who did sit had been irregularly or improperly assigned to that term, and that he was without jurisdiction to pass this order, and if we should uphold the validity of that contention, the only result would be that we would remand the cause so that this same order should be entered by the proper justice.    But as the question of jurisdiction is raised, even though it may not profit the appellants to raise it, it becomes necessary for us to give it due consideration.

2. The first and second assignments of error raise this question of jurisdiction.   The argument is, in the first place, that the Supreme Court of the District of Columbia in General Term had no statutory authority to assign Mr. Justice Cox to the special term for Orphans' Court business, while the assignment of Mr. Justice HAGNER to that term remained unrevoked; and, in the second place, that there was no statutory authority for the limitation of the powers and jurisdiction of a justice assigned to hold that special term to the exercise of certain specific duties.   To neither of these propositions can we give our assent.

By the act of Congress of March 3, 1863 (12 Stat. 763), creating the Supreme Court of the District of Columbia, and the substantial parts of which were incorporated into the Revised Statutes of the United States for the District of Columbia, it was provided, among other things, that any three of the justices of that court might hold a general term, and any one justice a special term of the court (Rev. Stat. for D. C., sec. 754); that the special terms should be held by one of the justices of the court at such time as the court in General Term should appoint (Id., sec. 757); that the court should have power, by rule of court, to regulate the periods of holding its terms, as also the periods of the special terms, at which issues of fact triable by a jury or by the court should be tried (sec. 755); and that it might establish such rules as it might think proper to regulate the practice of the court and from time to time revise and alter the same (sec. 770).   With these statutory provisions in force, the Supreme Court of the District of Columbia, in the year 1867, adopted the order which has been cited for an annual assignment of the justices of the court to the several special terms.   In compliance with this order, Mr. Justice HAGNER was, on December 22, 1893, assigned to hold during the year 1894, the special term for Orphans' Court business; and on the 1st of January, 1895, this assignment, with other assignments, was continued until the further order of the court.   It is claimed that thereby Mr.

Justice HAGNER was the sole justice authorized to sit in the special term for Orphans' Court business during the year 1895, and that consequently Mr. Justice Cox was without authority to go into that special term and to pass therein the order of March 14, 1895, from which appeal has been taken.

Neither acts of Congress nor rules of court should be construed so as to impede the public business and the administration of justice which it is their express purpose to facilitate. By the assignment of any justice of the Supreme Court of the District of Columbia to any special term of that court, no indefeasible proprietary right is intended to be created such as would prevent the court from supplying the place of the justice so assigned as occasion may require. Prolonged and unavoidable absence, disqualification on account of interest, and various other causes, may prevent a justice who is assigned to a special term from performing the duties of that term for a longer or shorter time, or in a number of cases, or in some particular cases, pending in that special term. Must we hold that the business of the court is to be arrested and stayed until the disqualification is removed, notwithstanding the fact that by law the duty of transacting the public business and administering justice is imposed upon the court, and not primarily upon its individual members, and that there are other justices who can readily be assigned to transact the business? We cannot think so. If there is any one thing more than another which commends the system upon which the Supreme Court of the District of Columbia is organized, it is the elasticity conferred upon it by law for the assignment of its several justices, and the readiness and promptness with which thereby the administration of justice can be conducted. The order for the annual assignment of justices, we must suppose, was adopted for the more orderly and certain conduct of the business of the court; and the provision of that order that no justice should transact or interfere with the business of either of such courts to which

he has not been assigned, is evidently for the same purpose. We must assume that it was not the intention of the court thereby to tie its own hands, to abdicate its control over its own business, and to permit its action to be paralyzed by the temporary disability of one of its members. If such were the effect of its order, it would be necessary to hold that such order was null and void as being in contravention of public policy and the express purpose for which the court was created. But no such construction is either necessary or proper. The true construction of the order requires the reservation to the court of the power and authority to supply the place of the justice generally assigned to a special term, whenever for any reason such substitution in the judgment of the court is necessary or proper. In accordance with this construction has been the invariable practice of the court; and in accordance with this construction and with its reserved right under the law, the court in recent years has frequently assumed to divide and distribute the business of the special terms, whenever, on account of the accumulation of such business, it deemed its division and distribution desirable in the public interest.

We find no warrant either in the law or in the orders or rules of the court for the theory that, before any justice can be assigned temporarily or for any special emergency to a special term, the assignment of the justice assigned thereto for the current year must be formally revoked. That would be a most useless and unnecessary formality. What is required is not the revocation, but the suspension of his assignment, inasmuch as the assignment should continue when the disability ceases or is removed. The special assignment necessarily operates *pro tanto* as a revocation or suspension of the general assignment; and there can be no good reason for recourse to the useless circumlocution of revocation and reappointment.

If we had any doubt on this point—and we may say very positively that we have none—the propriety of the assignment of Mr. Justice Cox in this instance would be fully

vindicated by the request to him by Mr. Justice HAGNER to
hold the special term.   The order of 1867 contemplated
that contingencies would arise in which it would be proper
to make such a request ; and we presume that, without any
special assignment by the General Term of the court, the
request of Mr. Justice HAGNER would have been ample
warrant for Mr. Justice Cox to hold the special term in his
place.

3. But it is argued that the court in General Term, in
making the assignment of Mr. Justice Cox, in this instance,
had no authority to limit his powers and jurisdiction to the
exercise of certain specific duties.   We fail to see the force
of this objection in the present case.   If the assignment
was valid, as we hold it must have been, and the limitation
upon the authority of the justice specially assigned was
invalid, which we do not hold, we do not see how that can
affect the case of the appellants.   If Mr. Justice Cox, in
the special term, did what we have no doubt he had the
right to do, it is not apparent how the legality of his action
in that regard can be affected by his failure to do something
else which the appellants claim he might lawfully have
done, but which he himself held that he could not do under
the warrant of his assignment.   An assignment or appoint-
ment is not void because there is an illegal or invalid limi-
tation annexed to it.   The limitation in that case is void,
but the appointment or assignment is good.   It is no more
than a condition subsequent, which does not vitiate acts
done previously to the accruing of the condition.   This
question, if question there is in it, might properly have
arisen, if Mr. Justice Cox, in disregard of the limitation
upon his authority, had proceeded to transact other busi-
ness, and had, for instance, heard and acted upon the ap-
plication of the appellants.   But we cannot consider any
such question, when the justice has clearly acted within
his authority.

There appears to us to be no sufficient ground on which
to sustain the present appeal.   The order, from which it

has been taken, is in exact accordance with the mandate of this court ; and it is well settled that, when, upon the mandate of an appellate tribunal, an inferior court enters a judgment or decree in precise accordance with that mandate, no second appeal will lie. *Mackall* v. *Richards*, 116 U. S. 45 ; *Humphrey* v. *Baker*, 103 U. S. 736 ; *Stewart* v. *Salamon*, 97 U. S. 361. In such case, the appeal should be dismissed : for there is nothing from which to appeal.

This appeal, therefore, will be *dismissed with costs. And it is so ordered.*